Roger **KINGSEPP**, On behalf of himself and all others similarly situated, Plaintiff,

v.

**WESLEYAN UNIVERSITY**, Princeton University, Harvard University, Yale University, Dartmouth University, Stanford University, Brown University, Amherst University, Williams University, University of Pennsylvania, Columbia University, and Cornell University, Defendants.

No. 89 Civ. 6121 (DNE).

United States District Court, S.D. New York.

June 2, 1992.

598

Steven M. Kramer & Associates, New York City (Steven M. Kramer, of counsel), for plaintiff.

Kaye, Scholer, Fierman, Hays & Handler, New York City (Stanley D. Robinson, John W. Schryber and Suzanne Jaffe Bloom, of counsel), for defendants Wesleyan University, Brown University, Columbia University, Cornell University, Dartmouth College, Harvard University, University of Pennsylvania, Princeton University and Yale University.

Stillman, Friedman & Shaw, New York City (Edward M. Shaw, New York City, Ropes & Gray, Boston, Mass., George Marshall Moriarty, Eleanor D. Acheson, Kevin J. O'Connor, and John Marrella, of counsel), for defendant Amherst College.

Shearman & Sterling, New York City (Jeremy G. Epstein, of counsel), for defendant Stanford University.

Davis, Markel & Edwards, New York City (Dennis H. Tracy, III, New York City, (Palmer & Dodge, Boston, Mass., Thane D. Scott and Bruce D. Berns, of counsel), for defendant Williams College.

## OPINION & ORDER

EDELSTEIN, District Judge:

Plaintiff Roger Kingsepp has moved pursuant to Fed.R.Civ.P. 23 ("Rule 23") to certify a class of plaintiffs for purposes of this antitrust action. For the reasons stated below, plaintiff's motion is denied.

## I. BACKGROUND

Plaintiff Roger Kingsepp, a recent graduate of Wesleyan University, brought this antitrust action on behalf of himself and others similarly situated. The defendants are twelve non-profit institutions of higher education. The Complaint alleges that defendants "have engaged in a conspiracy to fix or artificially inflate the price of tuition and financial aid." (Complaint, ¶ 6). As a result of the alleged conspiracy, plaintiff claims that "tuition and financial aid have been fixed, stabilized and inflated in violation of Section One of the Sherman Act," and that the class has therefore been damaged by "having to pay higher tuition than in a free competitive market." (Complaint, ¶ 13).

Plaintiff now seeks to certify a class of "all current or former students at the defendant schools who paid tuition or received financial aid during the period of the alleged price fixing conspiracy." (Plaintiff's Motion for Class Certification at p. 1). Defendants oppose class certification on numerous grounds. All defendants have joined in arguing that plaintiff's counsel, Stephen M. Kramer, lacks the qualifications to represent the putative class fairly and adequately.

## II. DISCUSSION

In determining whether a class should be certified, a district court must first consider each of the factors set forth in Rule 23(a), which provides:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of fact or law common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a)(4) requires that a class be adequately represented. Adequacy of representation depends on two factors: " '(a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the

proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class.' " *Weiss v. York Hosp.*, 745 F.2d 786, 811 (3d Cir.1984) (quoting *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975)); *see In Re The Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968), *vacated on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *County of Suffolk v. Long Island Lighting Co.*, 710 F.Supp. 1407, 1412 (E.D.N.Y.1989), *aff'd*, 907 F.2d 1295 (2d Cir.1990); *Brandt v. Owens–Illinois, Inc.*, 62 F.R.D. 160, 165–66 (S.D.N.Y. 1973); *cf. General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). While defendants argue that neither factor of Rule 23(a)(4) is met here, this opinion will only address whether plaintiff's attorney is qualified, experienced, and generally able to conduct the proposed litigation.

■ The adequate representation requirement "lies at the heart" of the rationale supporting class actions. *Johnson v. Shreveport Garment Co.*, 422 F.Supp. 526, 531 (W.D.La.1976). When a court finds that class counsel is "adequate" for purposes of Rule 23(a)(4), it creates a potential attorney-client relationship between class counsel and the absent members of the putative class. *See Amos v. Board of Directors*, 408 F.Supp. 765, 774 (E.D.Wis. 1976) ("In certifying a class action, the Court not only confers on absent persons the status of litigants, but in addition it creates an attorney-client relationship between those persons and a lawyer or group of lawyers"). Because class counsel seeks to determine the rights of absent putative class members, "a court must carefully scrutinize the adequacy of representation" when considering whether to certify a class. *Eisen*, 391 F.2d at 562; *see Smith v. Josten's American Yearbook Co.*, 78 F.R.D. 154, 163 (D.Kan.1978) ("In passing upon the adequacy of counsel, courts hold

attorneys to a 'heightened standard' in light of their great responsibility to the absent class."), *aff'd*, 624 F.2d 125 (10 Cir. 1980). The role of class counsel is akin to that of a fiduciary for the class members. *Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 646 F.Supp. 643, 661 (N.D.Ill.1986); *see Greenfield v. Villager Indus., Inc.*, 483 F.2d 824, 832 (3d Cir.1973) ("class counsel possess, in a very real sense, fiduciary obligations to those not before the court"); *cf. Alpine Pharmacy Inc. v. Chas. Pfizer & Co.*, 481 F.2d 1045, 1050 (2d Cir.) (class counsel "serves in something of a position of public trust"), *cert. denied*, 414 U.S. 1092, 94 S.Ct. 722, 38 L.Ed.2d 549 (1973).

■ Therefore, a Court must "scrutinize the character, competence and quality of counsel retained" by the plaintiff. *Smith v. Josten's Am. Yearbook Co.*, 78 F.R.D. at 163; *see Johnson*, 422 F.Supp. at 535 ("usually the degree of representation by the named party will be coextensive with the preparation and presentation of the named party's attorney"); *Jeffrey v. Malcolm*, 353 F.Supp. 395, 397 (S.D.N.Y.1973) ("Skilled representation may be crucial, for the outcome of a class suit—whether favorable or adverse to the class—is binding on the members of the class"). In assessing the adequacy of counsel, a court may examine class counsel's conduct in both: (1) prior litigations, and (2) the putative class action before the court. *Armstrong v. Chicago Park Dist.*, 117 F.R.D. 623, 634 (N.D.Ill.1987), *aff'd*, 886 F.2d 332 (7th Cir. 1989); *Johnson*, 422 F.Supp. at 535.

### A. Prior Litigations

■ Defendants argue that statements made by a number of federal judges who have presided over cases litigated by plaintiff's counsel, Mr. Steven M. Kramer, make it apparent that he is not qualified to act as class counsel in this case. While it is not a pleasant task to examine the skeletons in an attorney's closet, Rule 23(a)(4) requires such an inquiry. Regrettably, Mr. Kramer's closet has a number of skeletons.[1]

---

1. Mr. Kramer contends that "Kaye Scholer gives new meaning to the concept of chutzpah by

throwing stones at plaintiff's counsel, given that firm's contribution to the savings and loan de-

There is a body of federal caselaw involving Mr. Kramer's misconduct. *See Matthews v. Freedman,* 882 F.2d 83 (3d Cir. 1989); *Flip Side Productions, Ltd. v. JAM Prod., Inc.,* 843 F.2d 1024 (7th Cir.1988); *Rubin v. Buckman,* 727 F.2d 71, 72–73 (3d Cir.1984); *Fineman v. Armstrong World Indus.,* 774 F.Supp. 266 (D.N.J.1991); *Fineman v. Armstrong World Indus.,* 774 F.Supp. 225 (D.N.J.1991); *Lighting Luve, Inc. v. Witco,* No. 87–3243, letter opinion (D.N.J. Apr. 20, 1990); *Schwartz v. Hospital of the University of Pennsylvania,* No. 88–4865, slip op., 1989 WL 64286 (E.D.Pa. June 12, 1989), *appeal dismissed,* No. 90–1263 (3d Cir. April 26, 1990); *Matthews v. Freedman,* 128 F.R.D. 194 (E.D.Pa.1989), *aff'd,* 919 F.2d 135 (3d Cir.1990); *Seiffert v. Green,* No. 81–1956, slip opinion, 1987 WL 26670 (E.D.Pa. Dec. 8, 1987); *Caplan v. Fairchild Publications Corp.,* No. 84–6039, slip opinion, 1986 WL 10782 (E.D.Pa. Sept. 30, 1986). A review of these decisions reveals that Mr. Kramer has, *inter alia,* failed to obey a judge's orders, failed to heed a judge's instructions, failed to honor a settlement agreement, failed to comply with discovery orders, failed to adhere to filing requirements, and filed frivolous motions. As a result, he has been sanctioned under a variety of federal rules, admonished by several judges, and referred to the Disciplinary Board of the Supreme Court of Pennsylvania.

In *Fineman v. Armstrong World Indus., Inc.,* 774 F.Supp. 225 (D.N.J.1991), the court set aside a jury verdict obtained by Mr. Kramer in an antitrust action. The court found that the jury was misled by Mr. Kramer's "emotional, impassioned, incendiary plea" made despite cautions from the court. *Id.* at 248–49. Several passages of the opinion are devoted to counsel's conduct and his efforts to mislead the jury. In a subsequent opinion, the court granted defendant's motion for a new trial, finding that "Mr. Kramer's conduct demands the granting of a new trial." *Fineman v.*

*Armstrong World Indus.,* 774 F.Supp. 266, 269 (D.N.J.1991). After detailing Mr. Kramer's pervasive misconduct during the course of the trial, *see id.* at 270–75, the court stated that should there be a new trial on any issue it would entertain a motion to replace Mr. Kramer as plaintiffs' counsel:

> [C]onsidered in connection with his other conduct in this case which (given its pervasiveness) is substantially likely to recur upon any retrial, this Court, should this action be remanded for a new trial on any issue, will then entertain a motion, and might even issue its own order to show cause, as to why Mr. Kramer should not be replaced as plaintiffs' trial counsel, in the event that plaintiffs don't make that choice voluntarily.

*Id.* at 275. In conclusion, the court found that "curative instructions were of no avail in the face of Mr. Kramer's pervasive and flagrant appeals to speculation, sympathy, outrage and revenge from the jury." *Id.* at 276.

In *Matthews v. Freedman,* 128 F.R.D. 194 (E.D.Pa.1989), *aff'd,* 919 F.2d 135 (3d Cir.1990), Mr. Kramer represented a plaintiff claiming employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* On defendants' motion, the court dismissed plaintiff's Title VII claims because the complaint had not been timely filed. *See Matthews v. Freedman,* No. 88–3127 (E.D.Pa. Feb. 22, 1989). Subsequently, defendants moved for sanctions. In granting defendants' motion, the court described Mr. Kramer's conduct as follows:

> It was ... uncontested that the EEOC had issued the right-to-sue letter on August 12, 1987; it was also uncontested that attorney Kramer has asked the EEOC to send the letter directly to his offices. Attorney Kramer, however, offered no explanation regarding his failure to file his client's Title VII claims until April 14, 1988—eight (8) months

---

bacle." (Plaintiff's Reply Memorandum in Support of Class Certification, p. 4 n. 1). By making such a comment, Mr. Kramer ignores the fact that his competence and integrity are placed directly at issue by Rule 23(a)(4), while

defense counsels' competence and integrity are not. *Armstrong v. Chicago Park Dist.,* 117 F.R.D. 623, 631 n. 18 (N.D.Ill.1987), *aff'd,* 886 F.2d 332 (7th Cir.1989).

after the issuance of the right-to-sue letter and five (5) months after the expiration of the ninety (90) day filing period under § 2000e–5(f)(1). Instead, attorney Kramer professed his inability to advise the court of the date when he received the letter from the EEOC. I therefore orally, from the bench, directed the attorney Kramer forthwith to submit a letter to the court setting forth the date of his receipt of the right-to-sue letter.

After more than a month had passed without receiving any response to the court's request, on September 28, 1988, I signed an order directing attorney Kramer to provide a notarized affidavit within seven (7) days stating when he received the right-to-sue letter. The order also warned that I would consider his refusal to comply with the order to be grounds for holding him in contempt of court. Thirty (30) days later, on October 28, 1988, attorney Kramer filed his affidavit, wherein he stated that he "most likely received the Notice of Right to Sue Letter, dated August 12, 1987, within a month of its date."

*Matthews*, 128 F.R.D. at 196–97. Before imposing sanctions, the court documented a number of other actions where Mr. Kramer had been sanctioned for violating the Federal Rules of Civil Procedure. *Id.*[2] The court reprimanded Mr. Kramer for violating Rule 11 by pursuing his claim in "bad faith." *Id.* at 203. Moreover, the court found that "a monetary sanction and written reprimand alone would be insufficient to deter [Mr. Kramer] from similar conduct in the future." *Id.* Accordingly, the court referred Mr. Kramer to the Disciplinary Board of the Supreme Court of Pennsylvania. *Id.* at 203–04. The court then awarded defendants attorney's fees and costs under 28 U.S.C. § 1927. *Id.* at 206–07.

On appeal of the district court's dismissal of the complaint, the Third Circuit imposed

additional sanctions on Mr. Kramer for his failure to include in the appendix either the transcript of his arguments before the lower court or his brief in opposition to the motion to dismiss. The Third Circuit also sanctioned Mr. Kramer for his failure to respond to its request for a letter memorandum. *Matthews v. Freedman*, 882 F.2d 83, 85–86 (3d Cir.1989). The Court of Appeals found that these failures fell "far short of the conduct expected of a member of the bar of this court." *Id.*, at 86.

In *Schwartz v. Hospital of the University of Pennsylvania*, No. 88–4865, slip op. at 13, 1989 WL 64286 (E.D.Pa. June 12, 1989), *appeal dismissed*, No. 90–1263 (3d Cir. April 26, 1990), the district court found that Mr. Kramer violated 28 U.S.C. § 1927 by failing to honor a settlement agreement. Specifically, the district court held that Mr. Kramer and the plaintiff "acted in bad faith, and are jointly and severally liable, in failing to honor the settlement agreements entered into with the defendants and in opposing the motions of defendants to enforce the settlement agreements." *Id.* at 13. On appeal, the Third Circuit dismissed the appeal due to Mr. Kramer's failure "to make the required financial arrangements when ordering a transcript of the proceedings in the lower court." *Schwartz v. Hospital of the University of Pennsylvania*, No. 90–1263 (3d Cir. April 26, 1990).

In *Seiffert v. Green*, No. 81–1956, slip opinion, 1987 WL 26670 (E.D.Pa. Dec. 8, 1987), a putative class action, the plaintiffs were precluded under Fed.R.Civ.P. 37(b)(2)(B) from using certain information at trial because their attorney, Mr. Kramer, failed to comply with a discovery order. The court imposed sanctions on Mr. Kramer and indicated that the only reason it refrained from dismissing the action was that the noncompliance was entirely counsel's fault.

**2.** Among the cases cited by the *Matthews* court were: *Rubin v. Buckman,* 727 F.2d 71, 72–73 (3d Cir.1984) (affirming district court finding that Mr. Kramer had committed "a flagrant violation" of Rule 11); *Flip Side Productions, Ltd. v. JAM Prod., Inc.,* 843 F.2d 1024 (7th Cir. 1988) (affirming award of Rule 11 sanctions where Mr. Kramer offered "no theory or evi-

dence" in support of frivolous claim); *Caplan v. Fairchild Publications Corp.,* No. 84–6039, slip op., 1986 WL 10782 (E.D.Pa. Sept. 30, 1986) (dismissing complaint under Fed.R.Civ.P. 37 where plaintiff and his counsel, Mr. Kramer, repeatedly failed to comply with the court's discovery orders).

In *Lighting Luve, Inc. v. Witco*, No. 87–3243, letter opinion (D.N.J. Apr. 20, 1990), the court found Mr. Kramer in violation of Rule 11. The Court held that he had filed "a frivolous motion for sanctions alleging the intentional destruction of previously requested discovery" when, in fact, he had: (1) not formally requested such discovery, (2) not complied with local rules requiring consultation about discovery disputes, and (3) not disclosed that certain of the material at issue actually had been produced. *Id.* at 13–14.

This discussion does not exhaust the caselaw involving Mr. Kramer's misconduct. Nonetheless, it illustrates that Mr. Kramer, is unfit to serve as class counsel. While Mr. Kramer supports his claim of being adequate class counsel by listing a number of cases he has won, (Plaintiff's Motion for Class Certification at pp. 7–8; Plaintiff's Reply Memorandum In Support of Motion for Class Certification at pp. 5–6), such a list, standing alone, is insufficient to satisfy Rule 23(a)(4). Mr. Kramer's record in prior litigations does not demonstrate, as Mr. Kramer contends, that he is qualified, experienced, and generally able to conduct the proposed litigation. Rather, his documented failures to comply with a variety of court orders, statutory requirements, and the Federal Rules of Civil Procedure indicate that he is not an attorney who should be entrusted to conduct the proposed litigation.

## B. This Putative Class Action

While Mr. Kramer's misconduct in prior litigations provides a sufficient basis for this Court to conclude that he is not an adequate representative for the putative class, Mr. Kramer's handling of this action provides a separate independent basis for concluding that he is not adequate class counsel.[3] Mr. Kramer has filed memoranda in this action on two issues. The first

was filed in response to motions for lack of personal jurisdiction and improper venue made by Wesleyan University, the President and Trustees of Williams College, and the Trustees of Dartmouth College.[4] *See Kingsepp v. Wesleyan University*, 763 F.Supp. 22 (S.D.N.Y.1991). While the defendants' motion failed to address crucial issues central to a determination of the jurisdictional and venue issues, *see id.* at 24–26, plaintiff's response further obscured the issues. While such work reflects less than favorably on plaintiff's and defendants' counsel, defendants' counsel are privately retained; their clients can fire them. Absent class members—who will be bound by a judgement in this action should the proposed class be certified—have no such prerogative. Moreover, plaintiff's memorandum quoted large portions of text in the place of argument, analysis, or discussion. (*See* Memorandum in Opposition to Defendants' Motion To Dismiss at pp. 9–11, 14–15, 16–17, 27–29).

The second set of memoranda involved plaintiff's motion for class certification. Plaintiff's memorandum in support of class certification provides little more than a recitation of the requirements of Rule 23 and conclusory statements that the requirements are met in this case. (*See* Plaintiff's Motion for Class Certification). Plaintiff's reply memorandum is also lacking. Once again, the memorandum quotes large portions of text in the place of argument, analysis, or discussion as if the mere incantation of published text will have some talismanic significance. (*See* Plaintiff's Reply Memorandum in Support of Motion for Class Certification at pp. 3–4, 7–9, 9–10, 14–16). The memorandum avoids any analysis or discussion of a number of weighty arguments raised by defendants in opposition to class certification, opting instead for long quotes and conclusory assertions. As reflected in Mr. Kramer's memoranda on be-

3. *Grimes v. Pitney Bowes Inc.*, 100 F.R.D. 265, 271 (N.D.Ga.1983); *see Johnson v. Shreveport Garment Co.*, 422 F.Supp. 526, 535 (W.D.La. 1976) ("Counsel need not come to court with a resume and character references with which to prove his effectiveness; rather, his or her conduct in pretrial matters, discovery and the trial

itself will be evidence of his or her capability adequately to represent the class.").

4. The Complaint improperly refers to the President and Trustees of Williams College as "Williams University," and to the Trustees of Dartmouth College as "Dartmouth University."

half of the putative class, he has failed in the initial stages of this litigation adequately to represent the interests of the putative class members.

In sum, Rule 23(a)(4) requires this Court to make a prediction about the adequacy of class counsel. "As always when we are required to predict likely human behavior, the bases for that prediction must lie in past conduct." *Armstrong v. Chicago Park District*, 117 F.R.D. at 634. Taken separately, either Mr. Kramer's misconduct in prior litigations or his conduct in the initial phases of this litigation individually provide an independent basis for this Court to conclude that he does not satisfy the adequacy of counsel requirement of Rule 23(a)(4); taken together, they compel such a result.

## III. CONCLUSION

Plaintiff's motion for class certification is denied for failure to satisfy the adequacy of counsel requirement of Rule 23(a)(4). Because this Court finds that class certification is not appropriate for failure to satisfy Rule 23(a)(4), it need not address the other requirements enumerated in Rule 23(a) & (b). Pursuant to Rule 23(d)(4),[5] the pleadings are to be amended to eliminate class allegations within ten days of the filing of this opinion and order. This action survives only as an individual action on behalf of the named plaintiff.

SO ORDERED.

---

5. Fed.R.Civ.P. 23(d)(4) provides that the court may make appropriate orders "requiring that the pleadings be amended to eliminate there- from allegations as to representation of absent persons, and that the action proceed accordingly."