**Larry GASPAR for himself and all others similarly situated, Plaintiffs,**

v.

**LINVATEC CORPORATION, Bristol–Myers Squibb Company, Bristol–Myers Squibb Company Pension Committee, Bristol–Myers Squibb Company Retirement Income Plan, and Bristol–Myers Squibb Company Severance Plan, Defendants.**

No. 95 C 3574.

United States District Court, N.D. Illinois, Eastern Division.

May 23, 1996.

---

Thomas R. Meites, Paul William Mollica, Meites, Frackman, Mulder & Burger, Chicago, Illinois, H. Candace Gorman, Law Office of H. Candace Gorman, Chicago, Illinois, for Plaintiffs.

Thomas G. Hancuch, Edward C. Jepson, Jr., Michael Warren Sculnick, Ann Margaret Schlaffman, Vedder, Price, Kaufman & Kammholz, Chicago, Illinois, for Defendants.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is plaintiff Larry Gaspar's ("Gaspar") motion to certify a class action pursuant to Federal Rule of Civil Procedure 23 and for leave to issue notice of the class action to the class members. For the reasons that follow, the court grants Gaspar's motion.

## I. BACKGROUND

Gaspar worked for Linvatec Corporation ("Linvatec"), a subsidiary of Bristol–Myers Squibb Company ("Bristol–Myers"), as a machinist at its Chicago, Illinois, work site from December 1979 until December 31, 1993, when the facility closed. At the same time that Linvatec's Chicago facility closed, Bristol–Myers closed several other facilities as part of a corporate downsizing. Certain eligible employees who were laid off during the downsizing were offered a choice of one of two benefit plans: a voluntary early retirement plan and a severance plan. The employees were told that they could choose only one of the plans. Each employee choosing one of the plans was required to execute voluntarily a general release, by which the employee agreed to give up any right to sue defendants based on any acts occurring prior to the employee's signing the release. (See Def.'s Mem. in Opp. to Mot. to Certify a Class Action and for Leave to Give Notice Ex. B Attach. 2.)

Except Gaspar, all employees who were eligible for the retirement and severance plans chose one of the plans. Gaspar attempted to elect both plans, submitted a signed release "under protest" (see Def.'s Mem. in Opp. to Mot. to Certify a Class Action and for Leave to Give Notice Ex. I),

and ultimately was denied benefits under either plan.

Gaspar now sues Linvatec, Bristol–Myers, the retirement and severance plans, and the retirement plan administrator (collectively, "defendants"), alleging that defendants falsely told the terminated employees that they had to elect one of the plans and could not receive both, even though the plan documents contained no such limitation. In his three-count complaint, Gaspar alleges that defendants violated the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001–1461, by denying benefits for which the employees were eligible (Count I), by breaching their fiduciary duties (Count II), and by retaliating against Gaspar because of his challenge to defendants' actions (Count III).

Gaspar seeks to bring Counts I and II of his action on behalf of the terminated employees who were eligible for benefits under both the severance and early retirement packages. According to Gaspar, the class consists of:

1. COUNT I: All persons who are or could have been participants and beneficiaries of the Bristol–Myers Squibb Retirement Plan and Severance Plan and who were offered in the fall of 1993 an election of either severance pay under the Severance Plan or enhanced retirement pay under the Retirement Plan (as amended by the addition of the VPB); and

2. COUNT II: All persons who executed a release as a condition to receiving supplemental severance benefits under the Severance Plan or enhanced early retirement benefits under the Retirement Plan in 1993.

(Pl.'s Mem. in Supp. of Mot. to Certify a Class Action and for Leave to Give Notice at 1.)

## II. DISCUSSION

■ Federal Rule of Civil Procedure 23 sets forth the requirements for bringing a class action. The plaintiff bears the burden of proving that each of the Rule 23 requirements has been satisfied. *General Telephone Co. v. Falcon,* 457 U.S. 147, 161, 102

S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982); *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976). The plaintiff must establish both that the action satisfies the prerequisites of Rule 23(a) and may be maintained as a class action under Rule 23(b). *See* FED.R.CIV.P. 23; *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986).

■ When deciding whether to allow a claim to proceed as a class action, the court does not examine the merits of the case, but, rather, takes the plaintiff's allegations in support of the class action as true. *Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974).

Gaspar contends that he can satisfy Rule 23's requirements and therefore should be able to bring his case as a class action. Not surprisingly, defendants contend that Gaspar fails to satisfy several of the requirements and therefore that he cannot bring his case as a class action. Because the failure to satisfy even one of Rule 23(a)'s prerequisites is fatal to bringing a class action, the court will address each prerequisite separately. If Rule 23(a) is satisfied, the court then will determine if any one of Rule 23(b)'s requirements is met.

### A. Rule 23(a)

Rule 23(a) provides that a plaintiff may bring his claim on behalf of the class only if (1) the class is so numerous that joinder of all members is impracticable; (2) the claim involves questions of law or fact that are common to the class; (3) the claims or defenses of the plaintiff are typical of the claims or defenses of the class; and (4) the plaintiff fairly and adequately will protect the interests of the class. FED.R.CIV.P. 23(a). These prerequisites are commonly are referred to, respectively, as numerosity, commonality, typicality, and adequacy of representation.

### 1. Numerosity

As a preliminary matter, the court notes that Gaspar and defendants disagree about who can be a class member. Gaspar asserts that the proposed class for Count I should consist of employees who were or could have been participants in the retirement and sev-

erance plans and who, in the fall of 1993, were offered a choice of benefits under either plan, and their beneficiaries. Including employees and beneficiaries, Gaspar estimates that his class consists of up to 32 persons.

Defendants contend that beneficiaries cannot be class members because they are not "eligible employees" under the retirement or severance plan and only possess rights that are derivative to the employees' rights under the plans. Thus, Gaspar's class can consist of, at most, 18 persons.

Gaspar argues that ERISA sections 502(a)(1) and (2), 29 U.S.C. §§ 1132(a)(1) and (2), and *Senn v. United Dominion Indus.*, 951 F.2d 806, 811 (7th Cir.1992), *cert. denied*, 509 U.S. 903, 113 S.Ct. 2992, 125 L.Ed.2d 687 (1993), support his contention that beneficiaries have standing to sue to recover benefits. The court finds Gaspar's reliance on *Senn* and sections 502(a)(1) and (2) misplaced.

ERISA sections 502(a)(1) and (2) allow beneficiaries of benefit plans to sue to recover benefits because in some cases, it is the beneficiaries who are deprived of benefits. For example, one can imagine a deceased employee's widow suing for life insurance benefits. Obviously, it would be the widow, and not the deceased employee, who would be entitled to benefits under a life insurance plan.

*Senn* is such a case. In *Senn*, the class consisted of employees and beneficiaries of health and life insurance benefits. The beneficiaries as well as the employees had standing to sue because the beneficiaries were seeking health coverage and life insurance benefits, which are types of benefits that can be conferred directly on beneficiaries. *See Senn*, 951 F.2d at 811.

■ In Gaspar's case, however, only the employees were entitled to retirement and severance benefits. An employee's spouse or children might have "benefitted" from the retirement and severance benefits, in the colloquial sense of the word, but the benefits themselves were not conferred on the employee's spouse or dependents.

Therefore, the court finds that Gaspar's class action is limited to employees who were or could have been participants of the retire-ment and severance plans and were offered a choice between the plans. Consequently, Gaspar's proposed class numbers 18.

■ A proposed class must be so numerous that joinder of all members is impracticable. FED.R.CIV.P. 23(a)(1). The court is not limited to considering merely the number of potential class members, but may make common-sense assumptions that support a finding of numerosity. *Patrykus v. Gomilla*, 121 F.R.D. 357, 360–61 (N.D.Ill. 1988) (citing *Grossman v. Waste Management, Inc.*, 100 F.R.D. 781, 785 (N.D.Ill. 1984)). For example, the court may consider factors such as judicial economy and the ability of members to bring individual lawsuits. *See Patrykus*, 121 F.R.D. at 361 (citing *Tenants Associated for a Better Spaulding v. United States Dept. of Housing and Urban Development (HUD)*, 97 F.R.D. 726, 729 (N.D.Ill.1983)).

■ In addition, the court must look at the individual circumstances of a case in determining whether joinder is impracticable. *Patrykus*, 121 F.R.D. at 361. "A relatively small group may form a class if other considerations make joinder impracticable." *Id.* The geographical dispersion of class members is one of these considerations; that is, the more geographically separated the proposed members are, the more joinder becomes impracticable. *See id.*

■ First, the court notes that the mere number of members in Gaspar's proposed class—18—is not so small as to preclude the numerosity requirement from being met. *See, e.g., Patrykus*, 121 F.R.D. at 361 (citing *Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D.Ill.1983) (class of 20 held sufficient); *Dale Electronics v. R.C.L. Electronics, Inc.*, 53 F.R.D. 531, 534 (D.N.H.1971) (class of 13 held sufficient)).

Second, although Gaspar seeks damages for himself and the other proposed class members, the damages flow from the resolution of a single question: whether defendants violated ERISA by forcing Gaspar and the proposed class members to choose between the severance and early retirement plans.

Thus, judicial economy would be served by deciding this issue in one case.

Third, the potential class members are geographically dispersed between Illinois, New Jersey, and Tennessee. This factor also weighs against the practicability of joinder and in favor of a class action.

Last, though defendants object that most of the class members ultimately may opt out of the class, this possibility should not preclude class certification. Rather, it is something to consider if or when it comes to fruition. The court retains the option of decertifying the class. *See* FED.R.CIV.P. 23(c)(1).

The court finds that numerosity exists in the present case.

### 2. Commonality

■ A plaintiff seeking to bring a class action must show that at least one question of law or fact common to the class exists. *Patrykus*, 121 F.R.D. at 361 (citing FED.R.CIV.P. 23(a)(2); *Gomez v. Illinois State Board of Educ.*, 117 F.R.D. 394, 399 (N.D.Ill.1987)). Factual differences among the named plaintiff's and class members' claims "will not defeat a class action. A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 185 (N.D.Ill.1992) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1017–18 (7th Cir.1992)). "In fact, the commonality requirement has been characterized as a 'low hurdle' easily surmounted." *Scholes*, 143 F.R.D. at 185 (quoting *Wesley v. General Motors Acceptance Corp.*, No. 91 C 3368, 1992 WL 57948, *3 (N.D.Ill. March 20, 1992)).

■ In the present case, the essence of Gaspar's complaint is that defendants unlawfully forced their terminated employees to choose between the severance plan and early retirement plan, when in fact the employees were entitled to elect both benefit packages. Whether defendants were allowed to do so is the pivotal legal issue in both Gaspar's and the class members' claims. Several factual issues raised by Gaspar's claims also are common to the class. For example, key fact

questions may be what defendants told employees regarding the selection of one but not both of the benefit packages and what the plan documents themselves stated.

Because this case presents legal and factual issues that are common to class members, commonality exists. The fact that each class member's claim also may raise unique factual or legal issues does not destroy commonality.

### 3. Typicality

■ The claims of the representative plaintiff must be typical of the claims of the class. *Patrykus*, 121 F.R.D. at 361 (citing FED.R.CIV.P. 23(a)(3)). A representative's claims are typical of the class if they "have the same essential characteristics as the claims of the other class members." *Patrykus*, 121 F.R.D. at 361–62 (citing *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983)). That is, a representative's claims are typical of the class if they arise "from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [are] based on the same legal theory." *Patrykus*, 121 F.R.D. at 362 (quoting H. NEWBERG, NEWBERG ON CLASS ACTIONS § 1115(b) (1st ed. 1977)). Thus, the court considers the defendant's conduct and the plaintiff's legal theory to decide if typicality exists. *Scholes*, 143 F.R.D. at 185. Typical does not mean identical, and the typicality requirement is liberally construed. *Id.* (citing *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339, 344 (N.D.Ill.1978)).

■ In the present case, Gaspar's and the class members' claims arise out of the termination of Gaspar's and the class members' employment, and defendants' actions in requiring the terminated employees to select between the early retirement plan and the severance plan. Gaspar's legal theory, which applies equally to class members' claims, is that this forced selection between plans violated ERISA. Thus, it appears that Gaspar's claims are typical of the class members' claims.

Defendants argue, however, that the fact that all other class members signed general releases, while Gaspar did not, defeats typi-

cality. Defendants contend that because the other class members signed the general releases, they would be required to tender back to Bristol–Myers the consideration they received for executing the releases. Defendants also argue that because the class members signed their releases more than two years ago, any attempt to repudiate the releases now is barred by laches. Therefore, according to defendants, because the class members are subject to unique defenses that do not apply to Gaspar, Gaspar's claim is not typical of the class.

Gaspar counters that Count II of his complaint challenges the validity of the releases. Gaspar's complaint alleges that he signed general releases, but did so under protest, thereby causing defendants to deem the releases invalid and Gaspar ineligible for benefits. Gaspar thus contends that he shares the class members' interest in invalidating the releases because a declaratory judgment by the court invalidating the releases would "clear the one barrier to Gaspar ultimately collecting his benefits." (*See* Pl.'s Reply Mem. in Supp. of Mot. to Certify Class Action and for Leave to Give Notice at 8.)

Gaspar also argues that the issues of tender and laches as potential defenses to the class members' claims are "attenuated legal point[s] ... far removed from" the common core of allegations that form the basis of Gaspar's claim. (*See id.*) Finally, Gaspar contends that the tender argument is invalid because no tender requirement exists where a plaintiff challenges a release on the ground of misrepresentation.

The court is persuaded by Gaspar's arguments. Gaspar's Count II expressly asks the court to rescind the releases executed by Gaspar and the other class plaintiffs based on defendants' breach of fiduciary duty. (Am.Class Action and Individual Compl. at 11–13.) Thus, Gaspar makes the validity of the releases an issue common to him and the other class members.

■ Furthermore, although defendants may be able to raise defenses applicable to the other class members but not to Gaspar, the unique defenses do not necessarily preclude the court's finding of typicality. "Rule 23(a)(3) mandates the typicality of the named

plaintiffs' claims—not defenses.... [I]t is only when a unique defense will consume the merits of a case that a class should not be certified." *Riordan*, 113 F.R.D. at 63 (citing *Coleman v. McLaren*, 98 F.R.D. 638 (N.D.Ill. 1983); *Thillens, Inc. v. Community Currency Exchange Ass'n of Illinois, Inc.,* 97 F.R.D. 668, 678 (N.D.Ill.1983)).

The court finds that the defenses of release, tender, and laches, assuming they exist and are unique to the other class members, do not threaten to become primary issues in the case such that Gaspar's representation of the class would suffer. *Cf. Endo v. Albertine,* 147 F.R.D. 164, 168 (N.D.Ill.1993) (quoting *J.H. Cohn & Co. v. American Appraisal Assocs., Inc.,* 628 F.2d 994, 999 (7th Cir.1980) (" 'the fear of unique defenses [applicable only to the named plaintiff] is that the named plaintiff will become distracted by the presence of a possible defense applicable only to him so that the representation of the rest of the class will suffer' ")).

Accordingly, the court finds that typicality between Gaspar's claims and the other class members' claims exists.

### 4. Adequacy of representation

■ The representative plaintiff of a class must be able to represent the interests of the class adequately. *See* Fed.R.Civ.P. 23(a)(4). To determine whether the named plaintiff is an adequate class representative, the court considers (1) whether any conflicts of interest exist between the named plaintiff and the class members, and (2) whether the named plaintiff's counsel will adequately protect the interests of the class. *Patrykus,* 121 F.R.D. at 362 (citing H. Newberg, Newberg on Class Actions § 3.22 at 198 (2d ed. 1985); *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir.1986)).

■ The court finds no conflicts of interest between Gaspar and the other potential class members. Furthermore, Gaspar has submitted to the court affidavits by his counsel setting forth his counsel's experience. The affidavits indicate that each of Gaspar's three attorneys has numerous years of legal experience; that all three attorneys practice employment law, including ERISA law; and

at least two of the attorneys have experience in federal class actions. (*See* Pl.'s Mem. in Supp. of Mot. to Certify a Class Action and for Leave to Give Notice Ex. C, D.)

Accordingly, the court finds that Gaspar will adequately represent the class that he seeks to have approved.

### B. *Rule 23(b)*

Even if Rule 23(a)'s prerequisites are satisfied, the plaintiff may maintain his class action only if he shows one of the following: (1) the prosecution of separate actions by the class members would create the risk of inconsistent adjudications or would impair the ability of members to protect their interests; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or declaratory relief with respect to the class as a whole; or (3) questions of law or fact predominate over questions affecting only individual members, and a class action is superior to other methods of adjudication. FED.R.CIV.P. 23(b).

Gaspar contends that his potential class action meets the requirements of Rule 23(b)(2) and 23(b)(3). Defendants contend that the action meets neither. However, defendants also contend, in the alternative, that if the court finds that Gaspar's action meets one of the requirements of Rule 23(b), then it must meet only 23(b)(3), which allows the class members to opt out of the class.

### 1. Rule 23(b)(2)

Rule 23(b)(2) provides that a class action may be maintained if

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

FED.R.CIV.P. 23(b)(2). Gaspar contends that his complaint alleges that defendants acted on grounds generally applicable to the potential class of persons eligible for both the severance and voluntary retirement plans and seeks declaratory relief on behalf of the class. Defendants counter that because Gas-

par's complaint seeks predominantly monetary relief, it cannot satisfy the requirements of Rule 23(b)(2).

In Count I, Gaspar requests that the court determine that the count should proceed as a class action; award Gaspar and the other class members "damages in an amount to be determined by the jury herein, and award post-judgment and pre-judgment interest;" award Gaspar and the class members costs, expenses, and attorney's fees; and award Gaspar and the class members "such other equitable and declaratory relief as is just and proper." (Am.Class Action and Individual Compl. at 9–10.)

In Count II, Gaspar requests that the court determine that the count should proceed as a class action; that the court "order appropriate equitable or remedial relief, including rescission of the releases executed by" Gaspar and the other class members; award Gaspar and the other class members costs, expenses, and attorney's fees; and award Gaspar and the other class members "such other equitable and declaratory relief as is just and proper." (Am.Class Action and Individual Compl. at 13.)

In sum, both counts allege that defendants acted on grounds generally applicable to the class of persons eligible for both the retirement and severance plan benefits. Count I seeks primarily monetary relief; Count II seeks some equitable and declaratory relief, and some monetary relief. However, Gaspar's action as a whole seeks benefits under both the severance and retirement plans for Gaspar and the class members. The benefits under the plans obviously would be in the form of monetary relief, rather than the injunctive or declaratory relief required by Rule 23(b)(2).

Moreover, the court is concerned that the potential class members be able to opt out of the class. Defendants have raised the possibility that the class members who signed releases may have to tender back to Bristol-Myers the benefits they received in order to rescind their releases. Without deciding whether this is true, but assuming it is for now, the class members have every right to decide not to be a part of the class and to retain the benefits they have already re-

ceived. A class maintained under Rule 23(b)(2) need not be informed that members have the option of not being part of the class. *See* FED.R.CIV.P. 23(c)(2).

Accordingly, the court finds that if a class is to be maintained at all, it should be maintained under Rule 23(b)(3), which is more suited to claims for monetary damages and contains a provision requiring notification to class members of their opt-out option.

### 2. Rule 23(b)(3)

Rule 23(b)(3) provides that a class action may be maintained if

> the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

FED.R.CIV.P. 23(b)(3). In making its findings under this rule, the court considers

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

#### a. *Common questions predominate*

■ Under the rubric of commonality and typicality, this court found that questions of law and fact common to Gaspar's proposed class exist, and that Gaspar's and the other class members' claims arose from the same course of conduct of defendants. (*See* sections II.A.2. and II.A.3. above.) The court decided that the legal crux of Gaspar's complaint was that defendants unlawfully forced Gaspar and the class members to choose between the severance and retirement plans. The court thus found that commonality and typicality under Rule 23(a)(2) and (3) existed.

In contrast, Rule 23(b)(3) requires that common questions of law or fact not merely exist but *predominate* over any questions affecting only individual members. Notwithstanding this more rigorous test, the court reaches the same conclusion as it did regarding commonality and typicality. The questions of whether defendants were permitted to require Gaspar and the class members to elect either the retirement plan or the severance plan and whether the releases were valid predominate over the questions affecting individual members, such as potential defenses arising from the releases and damages. Accordingly, the court finds that common questions of law and fact predominate over questions affecting individual class members.

#### b. *Superiority of class action*

■ The court also finds that a class action is superior to other methods of adjudicating the claims raised by Gaspar's complaint, based on the factors set forth in Rule 23(b)(3)(A) through (D).

First, the court finds that the members of the class do not have a strong interest in individually controlling the prosecution of their own actions, rather than being part of a class action. As far as the parties have made the court aware, no individual class member has yet instituted an action similar to Gaspar's. Therefore, a class action would not interfere with any individual class member's pending action. In addition, the court has found that Gaspar and his counsel will adequately represent the interests of all class members.

Second, as the court already has noted, as far as the court knows, no litigation by or against the class members is currently pending.

Third, litigating Gaspar's and the other class members' claims in this forum will serve judicial economy by deciding in one proceeding the issues arising out of defendants' requiring Gaspar and the class members to choose between benefit plans, and will enable each class member to have his or her day in court without the effort of filing a separate claim and hiring counsel.

Fourth, the management of this class action will not raise insuperable difficulties. Gaspar already knows who the potential class members are and how to contact them. The class is relatively small. Any issues affecting only individual class members, such as damages or defenses, can be decided separately by motion or hearing.

The foregoing factors weigh in favor of allowing Gaspar's action to proceed as a class action under Rule 23(b)(3). Accordingly, Gaspar has met the requirements of Rules 23(a) and 23(b)(3), and may bring his action as a class action.

### C. *Notice of class action*

Since the court has found that Gaspar may bring his action as a class action pursuant to Federal Rule of Civil Procedure 23, the court also grants Gaspar leave to notify the class members of the class action.

In a class action maintained under Rule 23(b)(3), the notice of the class action provided to the class members must advise each class member that "the court will exclude the member from the class if the member so requests by a specified date." FED.R.CIV.P. 23(c)(2). In other words, any class member may opt out of the class action.

The court finds that this requirement is particularly appropriate in the present case, where all of the class members but Gaspar have signed general releases and received benefits under one of the benefit plans offered to them, and may be satisfied with what they have received or simply not want to be a part of a lawsuit for other reasons.

Accordingly, Gaspar's notice must conform to the following requirements. Gaspar is to issue his notice of the class action to the class members within ten days of the date of this memorandum opinion and order. The notice must explain clearly that each class member may choose not to join the lawsuit by providing notice in writing to the clerk of the court for the United States District Court for the Northern District of Illinois, within 60 days of the date of the notice. The notice must provide the correct address and phone number for the clerk of the court for the Northern District of Illinois.

To the extent that it complies with the foregoing requirements, Gaspar's proposed notice of the class action is acceptable. (*See* Pl.'s Mem. in Supp. of Mot. to Certify a Class Action and for Leave to Give Notice Ex. F.) To the extent that Gaspar's proposed notice does not conform to any of the foregoing requirements, it should be amended accordingly.

The court notes that if a number of class members opt out of the class action so as to defeat the numerosity prerequisite, or if other issues arise during litigation that make a class action an inappropriate method to adjudicate the claims raised by Gaspar's complaint, the court will vacate its order allowing Gaspar to bring his complaint as a class action, and will require Gaspar to proceed as an individual plaintiff. *See* FED.R.CIV.P. 23(c)(1).

### III. *CONCLUSION*

For the foregoing reasons, the court grants plaintiff Larry Gaspar's motion to certify a class action and for leave to give notice.