**Michael O'NEILL and all persons similarly situated, Plaintiff,**

v.

**GOURMET SYSTEMS OF MINNESOTA, INC., d/b/a Applebee's Neighborhood Grill and Bar, and Applebee's International, Inc., Defendants.**

No. 01–C–401–C.

United States District Court,
W.D. Wisconsin.

March 4, 2002.

Peter J. Nickitas, Superior, WI, for plaintiff.

James R. Scott, Lindner & Marsack, S.C., Milwaukee, WI, for defendants.

## OPINION AND ORDER

CRABB, Chief Judge.

This is a civil suit for monetary, declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1981, Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, and Wisconsin's public accommodation law, Wis. Stat. § 106.52. Plaintiff Michael O'Neill, a member of the Red Lake Band of Chippewa Indians, contends that defendants Gourmet Systems of Minnesota, Inc. and Applebee's International, Inc. discriminated against him on the basis of his race when a waiter at an Applebee's Neighborhood Grill and Bar franchise in Superior, Wisconsin, refused to accept his tribal identification card as proof that he is old enough to buy alcohol.

Jurisdiction is present. 28 U.S.C. § 1331. Presently before the court is plaintiff's motion for class certification under Fed.R.Civ.P. 23(b)(2). Plaintiff seeks certification of a class that would include all "adult individuals[ ] enrolled in any First Nation, or American Indian band, tribe, or nation recognized as sovereign entities by the United States Government, who have been issued official photographic tribal identification cards by their respective bands, tribes, or nations." Alternatively, plaintiff seeks certification of a class that would include all "adult individuals

enrolled in the Red Lake Band of Chippewa who have been issued official, photographic tribal identification cards by the Red Lake Band of Chippewa." Defendants oppose the certification of any class. I conclude that plaintiff has not provided an adequate definition of the classes he seeks to represent, the proposed classes lack standing and plaintiff has failed to satisfy Rule 23(a)'s typicality and adequacy of representation requirements. Plaintiff's motion for class certification will be denied.

Also before the court is defendants' partial motion to dismiss "that portion of Plaintiff's complaint which asserts a class-based claim of discrimination in the denial of public accommodations." Specifically, defendants seek the dismissal of plaintiff's § 1981 and Title II claims ·that rely on a disparate impact theory of liability. I conclude that a claim under 42 U.S.C. § 1981 requires proof of discriminatory intent and cannot be sustained by a showing of disparate impact. Therefore, the portion of plaintiff's third cause of action brought pursuant to § 1981, in which he alleges that "[d]efendants' policy of refusing to honor tribal photographic identifications imposes a racially disparate impact against [plaintiff]" will be dismissed for failure to state a claim upon which relief can be granted. In all other respects, defendants' partial motion to dismiss will be denied because plaintiff's complaint adequately states a disparate impact claim under Title II of the Civil Rights Act of 1964.

For the sole purpose of deciding these motions, I find that plaintiff's complaint fairly alleges the following facts.

## ALLEGATIONS OF FACT

Plaintiff Michael O'Neill is a 57–year–old member of the Red Lake Band of Chippewa Indians. The Red Lake Band is recognized by the United States government as a sovereign entity. Plaintiff does not drive or have a driver's license, but he has a photographic identification card issued by the Red Lake Band. In addition to a color photograph of plaintiff's face, the identification card includes plaintiff's name, address, date of birth, social security number, tribal identification number, height, weight and hair and eye colors. The identification card also includes the Red Lake Band's name and tribal logo.

Defendant Applebee's International, Inc. is incorporated in Delaware, has its corporate headquarters in Overland Park, Kansas, and owns or franchises 1,286 Applebee's Neighborhood Grill and Bar restaurants in 49 states and eight countries. Defendant Gourmet Systems of Minnesota, Inc. has its corporate headquarters in Overland Park, Kansas, and does business in Wisconsin as Applebee's Neighborhood Grill and Bar under a franchise agreement with defendant Applebee's International.

On November 13, 2000, an Applebee's franchise opened for business at 3605 Tower Avenue in Superior, Wisconsin. On November 14, 2000, plaintiff, his wife and his son's fiancée went to the Superior Applebee's for lunch. Once they were seated, plaintiff ordered a brandy and water. The server, Robin Krawza, asked plaintiff for identification verifying he was old enough·to order alcohol. Plaintiff gave Krawza his tribal identification card. Krawza asked whether plaintiff had another form of photographic identification and plaintiff replied that he did not. Krawza then told plaintiff that she had to talk to her manager before serving plaintiff alcohol. Krawza showed her manager, Greg Hartnett, plaintiff's tribal identification card. Hartnett told Krawza that the tribal identification card was not an acceptable form of identification for purposes of buying alcohol and Krawza, in turn, told plaintiff that she could not serve him the brandy and water he ordered.

Defendant Applebee's International provides its franchisees with procedures detailing what forms of identification are acceptable for purposes of purchasing alcohol. According to the alcohol policy, the only acceptable forms of identification are a valid photo-bearing driver's license, passport, military identification or state-issued identification card. (There is some dispute whether this policy is binding on franchisees or is merely a non-binding guideline).

Plaintiff and his party then left the Superior Applebee's without eating and went instead to Grizzly's, a nearby restaurant. At Grizzly's, plaintiff ordered two brandies and

was served them without having to show proof of his age. At some point after November 14, 2000, Steven Renne, a white male born in 1957, was served a beer at the Superior Applebee's bar and was not asked for proof of his age. In March 2001, plaintiff's 32–year–old son and his son's 37–year–old fiancée ordered alcoholic beverages at the Superior Applebee's and were served them without having to produce proof of age.

## OPINION

### A. *Motion for Class Certification*

■ In determining whether certification of a class is appropriate, allegations made in support of certification are taken as true and the merits of the case are not considered. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Koch v. Stanard,* 962 F.2d 605, 607 (7th Cir.1992). Plaintiffs bear the burden of showing that the class certification requirements have been met. *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993). Fed.R.Civ.P. 23 is to be interpreted liberally and in favor of the maintenance of class actions, *King v. Kansas City Southern Industries, Inc.,* 519 F.2d 20, 25–26 (7th Cir.1975), but a class action may be certified only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites" of the rule have been met. *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Rule 23 provides a district judge with great flexibility to adopt any appropriate procedures. *See generally Eisen,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732. Subdivision 23(c)(1) permits the district court to certify conditionally or to decertify a class if it becomes apparent that class treatment is inappropriate, suggesting that judges should err in favor of certification. *See generally* 7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1785 (2d ed.1986).

■ Fed.R.Civ.P. 23 requires a two-step analysis to determine whether class certification is appropriate. *Rosario v. Livaditis,* 963 F.2d 1013, 1017 (7th Cir.1992). First, plaintiffs must satisfy all four prerequisites

in Rule 23(a) by showing that (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequate representation). *Id.;* Fed. R.Civ.P. 23(a). Second, if the four threshold requirements set forth in Rule 23(a) are met, plaintiffs must satisfy at least one of the three subdivisions of Rule 23(b). "Failure to meet any one of the requirements of Rule 23 precludes certification of a class." *Harriston v. Chicago Tribune, Co.,* 992 F.2d 697, 703 (7th Cir.1993) (citations omitted).

■ Implicit in Rule 23 are two additional requirements. First, a proposed class definition must be "precise, objective and presently ascertainable." *In re Copper Antitrust Litigation,* 196 F.R.D. 348, 353 (W.D.Wis. 2000) (citing *Manual for Complex Litigation* § 30.14 (3d ed.1995)). Second, the named plaintiffs and the class they seek to represent must have standing. *Id.*

### 1. *Class definition*

■ The initial obstacle to certifying this case as a class action is plaintiff's failure to set forth a clear definition of the class (or classes) he seeks to certify. In his briefs supporting his motion for class certification, plaintiff never discloses a clear definition of the class he seeks to represent. Rather, plaintiff notes that he "stands as one of 6,089 enrolled members of the Red Lake Band aged 21 or older. He stands as one of 9,620 enrolled members of the Red Lake Band. He stands as one of 1,689,483 enrolled members of federally recognized tribes, bands or nations" and argues that this "qualifies [him] as a representative class member of a numerous class with two numerous subclasses." Br. in Supp. of Mot. to Certify Class Action, dkt. # 13, at 7. Later, plaintiff argues that

> [t]he numbers of concentric, similarly situated classes which will benefit from [plaintiff's] action and present motion—6,089 enrolled Red Lake members aged 21 and older, 9,620 total enrolled Red Lake mem-

bers, 50,000 + enrolled members of the First Nations in the State of Wisconsin, and 1,689,000+ enrolled members of the First Nations in the United States—simply demonstrate that this case will benefit many similarly situated persons.

Plt.'s Reply Br., dkt. # 18, at 12. Plaintiff does not explain which of these classes he is seeking to certify or, presuming he seeks to certify the broadest class of all "enrolled members of the First Nations in the United States," why various subclasses need to be certified.

Plaintiff's complaint is somewhat more precise than his briefs. In his complaint, plaintiff alleges that he is similarly situated to all other "adult individuals[ ] enrolled in any First Nation, or American Indian band, tribe, or nation recognized as sovereign entities by the United States Government, who have been issued official photographic tribal identification cards by their respective bands, tribes, or nations." First Am. Compl., dkt. # 3 at ¶ 28.2. Plaintiff also alleges that he is similarly situated to all "adult individuals enrolled in the Red Lake Band of Chippewa who have been issued official, photographic tribal identification cards by the Red Lake Band of Chippewa." *Id.* at ¶ 28.1. Again, the second of these two classes appears to be a subset of the first and plaintiff has not explained why both classes need to be certified. In any case, I conclude that both of plaintiff's proposed class definitions are too broad and will deny his motion for class certification.

As noted above, a plaintiff seeking class certification must satisfy at least one of the three subdivisions of Rule 23(b). In this case, plaintiff is seeking to certify a class for injunctive or declaratory relief under Rule 23(b)(2). "[L]ess precision in defining the class is required in actions seeking relief under Rule 23(b)(2) than in actions seeking damages under Rule 23(b)(3), in which notice is mandatory and class members are given an opportunity to opt out." 5 James Wm. Moore et al., *Moore's Federal Practice,* § 23.21[6], at 23–62.2 (3d ed.2001). Nevertheless, a "class must not be defined so broadly that it encompasses individuals who have little connection with the claim being litigated." 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1760, at 122.

Plaintiff's claim is overly broad because it includes an untold number of persons who are at no risk of suffering the injury about which plaintiff complains. Plaintiff was refused a brandy when his tribal identification card was deemed inadequate pursuant to a policy requiring customers ordering alcohol to produce evidence of their age in the form of a driver's license, passport or state or military identification card. Plaintiff's tribal identification card was his only option for proving his age because he does not have a driver's license or any of the other forms of identification acceptable under the policy. However, plaintiff's proposed class includes all members of government-recognized American Indian tribes (or, alternatively, all members of the Red Lake Band of Chippewa) who have been issued a photographic tribal identification card, regardless whether they have a driver's license, passport or state or military identification card as well. Unlike plaintiff, members of the proposed class who have one of the forms of identification acceptable under the policy are not at risk of suffering the injury plaintiff sustained.

An analytically similar case is *Pagan v. Dubois,* 884 F.Supp. 25 (D.Mass.1995), in which several Latino state prisoners challenged as unconstitutional the lack of prison staff capable of counseling and communicating in Spanish with HIV-positive Latino inmates. The inmates who brought the suit sought to certify a class of all Latino inmates in the state prison system. The court refused to certify the class, finding that "plaintiff's class definition is clearly overbroad. Latino prisoners who speak and write English are not harmed by the [challenged] conduct." *Id.* at 28. Similarly, in this case plaintiff has not explained how members of either of his proposed classes who have a driver's license, passport or state or military identification card are harmed by defendants' policy. Accordingly, plaintiff's proposed class definition is overbroad.

█ I note also that the larger of plaintiff's proposed class definitions is overly broad for another reason. Plaintiff alleges in

his complaint that his tribal identification card includes his name, address, date of birth, social security number, tribal identification number, height, weight and hair and eye colors. However, plaintiff proposes to proceed on behalf of members of all recognized American Indian tribes "who have been issued official photographic tribal identification cards by their respective bands, tribes, or nations." Although plaintiff's card (and, presumably, the cards of other members of the Red Lake Band of Chippewa) contains date of birth and various other identifying information, it is possible that such information does not appear on the identity cards issued by *every* American Indian band, tribe or nation. Identity cards without a date of birth would be of little use in determining whether a person is old enough to legally purchase alcohol.

### 2. *Standing*

██ Some courts analyze the problems posed by overly broad class definitions under the rubric of standing. "In order to state a class action claim upon which relief can be granted, there must be alleged at the minimum (1) a reasonably defined class of plaintiffs, (2) all of whom have suffered a constitutional or statutory violation (3) inflicted by the defendants." *Adashunas v. Negley,* 626 F.2d 600, 603 (7th Cir.1980). In *Adashunas,* the parents of two children brought a class action on behalf of "all children attending public schools within Indiana who have specific learning disabilities and are not receiving adequate special education." *Id.* at 601. The Court of Appeals for the Seventh Circuit upheld the district court's denial of class certification, holding that because "the proposed class is so amorphous and diverse, it cannot be reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief." *Id.* at 604. Accordingly, for purposes of class certification, the complaint "fail[ed] to cite an actual case or controversy under Article III of the Constitution." *Id.*

Similarly, in *McElhaney v. Eli Lilly & Co.,* 93 F.R.D. 875, 877 (D.S.D.1982), the plaintiff sought to certify a class of "all male and female young people residing in South Dakota who are similarly situated in that they have been exposed to DES [diethylstilbestrol] as unborn children." As in the present case, in *McElhaney,* the plaintiff sued for actual and punitive damages for herself and sought injunctive relief for the plaintiff class. With respect to the plaintiff's proposed class definition, the court observed that "although plaintiff alleges that she is suffering from DES-related injuries, there appears to be no requirement that any class member has sustained any injury or damage." *Id.* at 877. In denying class certification, the court noted that "[t]he definition of a class cannot be so broad as to include individuals who are without standing to maintain the action on their own behalf." *Id.* at 878; *In re Copper Antitrust Litigation,* 196 F.R.D. at 353 ("Implicit in Rule 23 is the requirement that the plaintiffs and the class they seek to represent have standing."); 7B Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1785.1, at 140 ("An appropriate application of standing in class suits necessitates an inquiry into whether the class members have been injured by defendant's conduct, thereby presenting a 'live' case, as well as whether the representative party himself has been injured so that he has a sufficiently direct interest to assure adequacy of representation.").

██ Plaintiff has not alleged that any member of his proposed class has sustained an injury comparable to the one he suffered. The mere allegation that racial discrimination "has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified." *Falcon,* 457 U.S. at 157, 102 S.Ct. 2364. Accordingly, at this point I cannot find that members of either of the broad classes that plaintiff seeks to represent have suffered injury sufficient to demonstrate standing.

I note that some authorities have criticized the "uncritical reliance by the courts on standing-related concepts in attempts to articulate the limits of the Rule 23 qualifications." 1 Newberg and Conte, *Newberg on Class Actions* § 2.07, at 2–44 (3d ed.1992). According to these authorities, although the named plaintiff must demonstrate standing,

passive [class] members need not make any individual showing of standing, because the standing issue focuses on whether the plaintiff is properly before the court, not whether represented parties or absent class members are properly before the court. Whether or not the named plaintiff who meets individual standing requirements may assert the rights of absent class members is neither a standing nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions. *Id.* at 2–40–41. Although I am persuaded that class certification must be denied on the grounds that plaintiff has not defined an appropriate class and that the proposed class lacks standing, *see, e.g., McElhaney,* 93 F.R.D. at 878, in the interest of thoroughness I will discuss the Rule 23(a)'s typicality and adequacy of representation requirements. Fed. R. Civ P. 23(a)(3), (4). Discussion of these factors is complicated by the fact that plaintiff has not discussed either requirement individually in his briefs supporting his motion for class certification. The closest plaintiff comes to addressing the Rule 23(a)(3) and (4) requirements is his bare assertion that "if [plaintiff's] I.D. is no good at Applebee's, then none of his fellow class members' I.D.'s are." Br. in Supp. of Mot. to Certify Class Action, dkt. # 13, at 7. For largely the same reasons discussed above, plaintiff has not satisfied these requirements, which are closely "related to standing concepts." 1 Newberg and Conte, *Newberg on Class Actions* § 2.07, at 2–30.

### 3. *Rule 23(a)(3) typicality*

Rule 23(a)(3) asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). The typicality inquiry "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225 (7th Cir.1983). It "compares the claims of the class representative with those of other class members" and "asks: Is the injury in fact which the plaintiff has suffered of the same kind suffered by

members of the class?" 1 Newberg and Conte, *Newberg on Class Actions* § 2.07, at 2–48. Here, the answer is no. Plaintiff's injury stems both from the fact that his tribal identification card is unacceptable under the defendants' policy and that he does not have one of the forms of identification that the policy deems acceptable. However, as discussed above, plaintiff's proposed classes contain an untold number of persons who are not in plaintiff's position because they possess a driver's license, passport or state or military identification card. "[T]he typicality test analysis requires a showing by the plaintiff that the defendants' challenged conduct as it has allegedly injured the plaintiff is reflected in the defendants' similar or other practices toward class members in the same way it is manifested in the defendants' conduct specifically affecting the plaintiff." 1 Newberg and Conte, *Newberg on Class Actions* § 3.19, at 3–111 (citing *Falcon,* 457 U.S. at 158, 102 S.Ct. 2364). Although Rule 23(a)(3) entails no requirement "that each member of a class suffer precisely the same injury as the named class representatives," *De La Fuente,* 713 F.2d at 232–33, in this case it is likely that many of the members of plaintiff's proposed classes have suffered *no injury at all* because they possess a form of identification acceptable under the policy.

The conclusion that plaintiff's claim is not typical of the claims of the class members he seeks to represent is bolstered by the line of argument plaintiff advances in support of his motion for class certification. Although plaintiff's class-based claim is premised on a disparate impact theory, he devotes most of his attention to a discussion of the allegedly intentional discrimination he suffered at the hands of defendants. Rather than discuss the requirements of Rule 23, petitioner asserts that "Defendants misstate the record in arguing they did not *intentionally discriminate* against [plaintiff]"; "Defendants' 'policy' [was] not applied to younger Caucasian males"; "[e]vidence of falsity in a discrimination defendant's explanation for its actions allows a fact-finder to find *intentional discrimination* as a motivating factor for the defendant's actions"; "[defendants] light-fingered approach to Wisconsin law adds ad-

ditional support to [plaintiff's] claim of *intentional discrimination*"; and that "Defendants' mendacity justifies certification as a class action." Plt.'s Reply Br., dkt. # 18, at 2–3, 8–11 (emphasis added). The Supreme Court has expressed skepticism that Rule 23(a)'s typicality requirement is satisfied when a representative plaintiff attempts to sustain an individual claim by proving intentional discrimination when class claims hinge on statistical evidence of disparate impact. *Falcon*, 457 U.S. at 159, 102 S.Ct. 2364. Accordingly, it cannot be said that plaintiff's situation is typical of the class members he seeks to represent.

4. *Rule 23(a)(4) adequacy of representation*

■ The adequacy of representation requirement is intended to insure that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). "[A]dequacy of representation is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interests' of the class members." *Retired Chicago Police Ass'n*, 7 F.3d at 598 (quoting *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir.1986)). "The most commonly accepted guideposts are that the plaintiff must have no conflict with the class and will vigorously prosecute the litigation on behalf of the class." 1 Newberg and Conte, *Newberg on Class Actions* § 2.07, at 2–47. In assessing whether the plaintiff will vigorously prosecute a class action, courts consider the experience and resources of the lawyers for the class, as well as their record in the current case. 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1769.1, at 375; *Moore's Federal Practice*, § 23.25[5][b][i]-[iii], at 23–146–48. By itself, the fact that class counsel does not have extensive experience litigating class actions is not disqualifying. *Armstrong v. Chicago Park District*, 117 F.R.D. 623, 631 (N.D.Ill. 1987). However, the "inquiry into the adequacy of class counsel" is of "extreme importance" because of the "broad binding effect of class action judgments." 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1769.1, at 374, 383. "As with each

of the other class action prerequisites, plaintiff bears the burden of proving his adequacy as a class representative as well." *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 507 (S.D.Ind.1999).

■ Plaintiff's counsel has made no specific arguments regarding his ability to represent the proposed classes adequately or provided the court with any details concerning his experience, resources or ability to represent the interests of a class potentially composed of every adult American Indian in the United States who has been issued a photographic tribal identification card. Although there is no reason to suspect that plaintiff's counsel is not prepared to represent an individual plaintiff adequately in this case, his briefs in support of his motion for class certification, which identify but do not specifically argue any of the Rule 23(a) requirements, suggest he might not have sufficient experience in class-based discrimination litigation to represent a class of the magnitude proposed here. *See id.* at 508 (class counsel failed to satisfy Rule 23(a)(4) when she provided court no specifics regarding experience and resources and did little more than recite Rule 23 requirements in motion for class certification). Accordingly, I cannot conclude that plaintiff has demonstrated that he can adequately represent the classes he proposes to certify.

Plaintiff has failed to satisfy Rule 23(a)'s typicality and adequacy of representation requirements; he has not provided an appropriate definition of the classes he seeks to represent; and the proposed classes lack standing. Therefore, plaintiff's motion for class certification will be denied. With this resolution of the motion, it is not necessary to discuss the separate requirements of Rule 23(b).

B. *Defendants' Partial Motion to Dismiss*

Defendants have filed a motion to dismiss "that portion of Plaintiff's complaint which alleges class-wide discrimination against Defendants." Dfts.' Notice of Mot. and Mot. to Dismiss, dkt. # 15, at 1. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) will be granted only if "it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations" of the complaint. *Cook v. Winfrey,* 141 F.3d 322, 327 (7th Cir.1998) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59, (1984)); *Gossmeyer v. McDonald,* 128 F.3d 481, 489 (7th Cir.1997). Moreover, in a Rule 12(b)(6) motion to dismiss, all plaintiff's well-pleaded facts are taken as true, all inferences are drawn in favor of plaintiff and all ambiguities are resolved in favor of plaintiff. *Dawson v. General Motors Corp.,* 977 F.2d 369, 372 (7th Cir.1992).

■ As discussed above, plaintiff's motion for class certification will be denied. What additional relief defendants seek by asking the court to dismiss "that portion of Plaintiff's complaint which alleges class-wide discrimination" is unclear. Several of plaintiff's claims for relief allege harms committed against "all enrolled members of the Red Lake Band of the Chippewa (Anishinaabe) American Indians, all enrolled members of any sovereign and or/recognized band of First Nation/American Indians, and all individuals of First Nation/American Indian race and/or ancestry." Because plaintiff's motion for class certification will be denied, defendants' motion to dismiss those portions of plaintiff's complaint referring to the putative class is unnecessary.

■ Apparently, however, defendants seek to prevent plaintiff from arguing that defendants' alcohol service policy has a racially disparate impact on American Indians. Defendants argue correctly that a claim under 42 U.S.C. § 1981 requires proof of discriminatory intent and cannot be sustained by a showing of disparate impact. *General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 389, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (" § 1981 reaches only purposeful discrimination."). Accordingly, that portion of plaintiff's third cause of action brought pursuant to § 1981, in which plaintiff alleges that "[d]efendants' policy of refusing to honor tribal photographic identifications imposes a racially disparate impact against [plaintiff]" will be dismissed for failure to state a claim upon which relief can be granted. On the other hand, defendants have not argued that plaintiff's complaint fails to state an intentional discrimination claim under § 1981. Therefore, I need not consider that issue.

■ As to plaintiff's claim under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a, defendants argue that "doubt exists as to whether [Title II] would support a disparate impact theory of recovery." This argument is not sufficient to support a Rule 12(b)(6) motion. At least one court of appeals has noted that "the Supreme Court ... has [not] addressed the question of whether disparate impact claims are cognizable under Title II" and "the law in other circuits is generally unclear as to whether disparate impact claims are recognizable under Title II." *Arguello v. Conoco, Inc.,* 207 F.3d 803, 813, n. 11 (5th Cir.2000) (citing cases "in which courts have acknowledged disparate impact theories in Title II cases"). The fact that doubt exists as to the viability of a disparate impact theory under Title II is not a ground for dismissal. "[W]hen acting on a motion to dismiss the district court is supposed to indulge all factual and legal possibilities in plaintiffs' favor." *Palmer v. Board of Education,* 46 F.3d 682, 684 (7th Cir.1995). It may later become necessary to decide whether a disparate impact claim is cognizable under Title II, but defendants have not argued that issue in any depth in their briefs on the motion to dismiss.

Without citing any case law, defendants argue also that plaintiff has failed generally to state a disparate impact claim and they contend that their alcohol policy is justified. Dfts.' Br. in Opp'n to Mot. to [sic] Class Certification and in Supp. of Partial Mot. to Dismiss, dkt. # 16, at 6–7 ("[B]usinesses [are] obliged to insure that restricted items do not fall into the hands of minors;" "Defendants have an obvious business necessity defense."). In *Arguello,* 207 F.3d at 813, the Court of Appeals for the Fifth Circuit upheld a district court's dismissal of claims under Title II, holding that "the plaintiffs did not establish a prima facie case of discrimination of the type required in disparate impact claims." In *Arguello* the court dismissed the plaintiffs' disparate impact claims after finding, among other things, that the complaints "set forth facts regarding approximately six specific incidents of racially discriminatory

treatment, but do not establish any widespread or general effect on minority consumers." *Id.* Similarly, some courts considering the sufficiency of a complaint alleging disparate impact discrimination in Title VII employment cases have connected the analysis of the sufficiency of the pleadings to the evidentiary requirements needed to make out a prima facie case of discrimination. *See, e.g., Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712–13 (2d Cir.1998).

I am not persuaded that these cases reflect the proper approach for evaluating the sufficiency under Rule 12(b)(6) of a disparate impact claim. Recently the Supreme Court cautioned courts against imposing heightened pleading standards beyond the "short and plain statement of the claim showing that the pleader is entitled to relief" required by Fed.R.Civ.P. 8(a)(2). In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), the Court noted that it "has never indicated that the requirements for establishing a prima facie case under [Title VII] also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511, 122 S.Ct. 992. Rather, a complaint's function is to "simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests'" because "notice pleading ... relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* at 512, 122 S.Ct. 992. (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). This comports with the Court of Appeals for the Seventh Circuit's understanding of notice pleading in discrimination cases. *See, e.g., Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.1998) ("'I was turned down for a job because of my race' is all a complaint has to say" for a plaintiff to state a claim for racial discrimination in employment). Among other things, *Bennett* involved a disparate impact claim that the district court had dismissed because it found that the disparate impact data in the plaintiff's complaint was outdated. Although the court of appeals noted that "litigants may plead themselves out of court by alleging facts that establish defendants' entitlement to prevail," it concluded that nothing in the plaintiff's complaint showed conclusively that the defendants were entitled to victory and noted that "better data might be gathered during discovery." *Id.* at 519. Similarly, other courts have recognized that in disparate impact cases, "to survive a motion to dismiss, all that plaintiff must do is plead that a facially neutral practice's adverse effects fall disproportionately" on a protected class. *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir.1999), *overruled on other grounds by Alexander v. Sandoval*, 532 U.S. 275, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001).

Here, plaintiff has identified a facially neutral policy governing the service of alcohol and has alleged that it has a racially disparate impact on American Indians. Plaintiff is not obligated *at the pleading stage* to provide data showing, for instance, that American Indians are more likely to be affected by defendants' policy because they are statistically less likely to have a form of identification acceptable under the policy. Whether plaintiff can actually come up with proof establishing the policy's disparate impact is an entirely different question left for later stages of the proceedings, as is an evaluation of any "business necessity" defense offered by defendants. *See Arnett v. California Public Employees Retirement System*, 179 F.3d 690, 697 (9th Cir.1999). Accordingly, with the exception of plaintiff's disparate impact claim under 42 U.S.C. § 1981, defendants' partial motion to dismiss will be denied.

## ORDER

IT IS ORDERED that

1. Plaintiff Michael O'Neill's motion for class certification is DENIED.

2. The partial motion to dismiss of defendants Gourmet Systems of Minnesota, Inc. and Applebee's International, Inc. is GRANTED with respect to plaintiff's disparate impact claim under 42 U.S.C. § 1981 and is DENIED in all other respects.